**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NORKUS ENTERPRISES, INC., | : | CIVIL ACTION NO. 04-4437 (MLC) |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| v. | : | |
| GETTY OIL COMPANY, INC., et al., | : | |
| Defendants. | : | |

**COOPER, District Judge**

The defendants, ChevronTexaco Corporation ("ChevronTexaco"), individually and as successor-by-merger to Getty Oil Company, Inc. ("Getty"), Texaco, Inc. ("Texaco"), and Texaco Refining and Marketing Company, Inc. ("TRMI"), move to transfer the action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ ("section[s]") 1404(a) and 1412. The defendants contend that the "interest[s] of judicial economy and effective administration of the Bankruptcy Code require the transfer of this action." (Defs. Br., at 6.) For the reasons discussed below, the Court will transfer the action to the Southern District of New York pursuant to section 1404(a).[1]

---

[1] Section 1412 states that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Id. Because the Court is transferring the action pursuant to section 1404(a), the part of the motion seeking transfer under section 1412 is denied as moot.

**BACKGROUND**

**I.   The Site**

Tidewater Oil Company ("Tidewater") acquired property located at 505 Richmond Avenue, Point Pleasant Beach, New Jersey, on March 25, 1935 (the "Site"). (McGahren Cert., at ¶¶ 2-3.) Getty took title to the Site in 1967 by merger with Tidewater. (Id. at ¶ 3.) Getty owned and operated a gasoline service station on the Site until transferring title of the Site to Harry May, Jr. and Minnie May (the "Mays") on March 28, 1967. (Id.) After the transfer, Getty ceased operations at the Site. (Id.)

The Mays conveyed the Site (and surrounding parcels) to Neptune Gardens Supermarket, Inc. ("Neptune") on October 1, 1969. (Id. at ¶ 4.) At the time of the conveyance, the Site was an asphalt-covered parking lot. (Pl. Br., at 1.) Neptune operated a supermarket on the Site until the early 1970's, when Norkus Brothers, Inc., predecessor-in-interest to the plaintiff, Norkus Enterprises, Inc. ("Norkus"), acquired Neptune. (Norkus Cert., at ¶ 3.) Norkus then operated a supermarket on the Site.

**II.  The Texaco Bankruptcy**

Texaco and TRMI acquired all of Getty's assets on February 17, 1984. (McGahren Cert., at ¶ 6.) Texaco petitioned for relief under Chapter 11 of the Bankruptcy Code on April 12, 1987, after a highly-publicized $10.5 billion verdict was entered against Texaco. (Id. at ¶ 9.) The United States Bankruptcy Court for the

2

Southern District of New York (the "Bankruptcy Court") confirmed Texaco's Second Amended Joint Plan of Reorganization (the "Confirmation Order") on March 23, 1988, and the bankruptcy was closed on October 9, 1991.  (Id. at ¶ 10; Rmv. Not., at ¶ 12.) Texaco merged with Chevron Corporation in 2001 to form the defendant ChevronTexaco, which became the successor-in-interest to Getty, Texaco, and TRMI.  (McGahren Cert. at ¶ 6.)

### III. Discovery of Contamination at the Site

Norkus, in connection with refinancing the Site, conducted a Phase I Environmental Investigation of the Site on April 20, 1999, and May 19, 1999.  (Norkus Cert., at ¶ 6.)  The soil sampling did not detect the presence of gasoline or other contaminants.  (Id.) A subsequent Phase I Environmental Site Assessment in 2002, using Ground Penetrating Radar, uncovered the presence of four 2,000 gallon underground gasoline tanks ("UGTs").  (Id. at ¶¶ 7-8.)  The UGTs were located beneath the parking lot that was previously occupied by the Getty Gas Station.  (Id. at ¶ 8.)  The UGTs were removed from the Site on March 3, 4, and 5, 2004.  (Id. at ¶ 11; McGahren Cert., at ¶ 8.)  Soil samples were taken during remediation of the Site, which indicated that gasoline had leaked into the soil prior to 1986.  (McGahren Cert., at ¶ 8; Pl. Br., at 3.)

**IV.   The Present Action**

Norkus brought an action against the defendants in the Superior Court of New Jersey, Ocean County, on August 2, 2004. (See Rmv. Not., at ¶ 1.)  Norkus claimed, inter alia, that the defendants violated the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J.S.A. § 58:10-23.11f.  (Pl. Br., at 3.) As such, Norkus sought monetary and mandatory injunctive relief. (See Rmv. Not., at 25.)  ChevronTexaco, on behalf of the other named defendants, removed the action to this Court on September 13, 2004.  (Dkt. entry no. 1.)  The defendants filed an answer on March 7, 2005, asserting the discharge of the claims by the Texaco bankruptcy among their affirmative defenses.  (Dkt. entry no. 6.) The "heart" of the defendants' discharge defense is that

> the standard provision in ¶ 22 of the Confirmation Order that, subject to certain exceptions, "[Texaco] be, and hereby is, discharged of and from any and all debts and claims that arose against it before the date of entry of this order[.]" . . . The Confirmation Order also establishes in ¶ 25 a permanent injunction against the prosecution of discharged claims, as follows:
>> The commencement or continuation of any action, the employment of process, or any act to collect, recover or offset any debt discharged hereunder as a personal liability of [Texaco], or from property of [Texaco], be, and it hereby is, permanently enjoined, stayed and restrained.

See May v. Texaco Inc., No. 97-2019, 1998 WL 34250028, at *1-*2 (W.D. La. Nov. 25, 1998) (citing to provisions of Confirmation Order).

**DISCUSSION**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To demonstrate that an action "might have been brought" in a transferee district, a movant is ordinarily required to demonstrate both the propriety of venue in the transferee district and jurisdiction over all of the defendants. Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970). The moving party also bears the burden of demonstrating that the alternative forum is more appropriate than the present one. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); Liggett Group v. R.J. Reynolds Tobacco Co., 102 F.Supp.2d 518, 528-29 (D.N.J. 2000). The moving party must present sufficient information on the record to meet this burden of persuasion and to facilitate the Court's analysis. Liggett, 102 F.Supp.2d at 529.

The three section 1404(a) factors that a court must consider when determining whether to transfer an action are: (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice. 28 U.S.C. § 1404(a); Jumara, 55 F.3d at 879. These factors, however, are merely a starting point. In deciding whether to transfer, a court must also consider "all relevant factors to determine whether on balance the litigation would more

5

conveniently proceed and the interests of justice be better served by a transfer to a different forum." Jumara, 55 F.3d at 879.

The Court will consider private and public interest factors to determine whether to transfer this action. Jumara, 55 F.3d at 879. Private interests include: (1) the plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses — but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). Id. The ease of access to sources of proof, availability of compulsory process over unwilling witnesses, and the possibility of a jury view of the premises, are other private interest factors. Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1947).

The public interests include: (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Jumara, 55 F.3d at 879-80.

The above list of factors is merely a guide, and not all of the factors may be relevant or determinative in each case. Id.; Sandvik, Inc. v. Cont'l Ins. Co., 724 F.Supp. 303, 307 (D.N.J. 1989). The analysis under section 1404 is a "flexible" one to be made on the "unique facts" in each case. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988); Liggett, 102 F.Supp.2d at 527. A determination that transfer is appropriate represents an "exercise[] of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and to the court should a particular action be litigated in one forum rather than another." Lony v. E. I. Du Pont de Nemours & Co., 886 F.2d 628, 632 (3d Cir. 1989) (citation omitted).

**I.   Venue & Jurisdiction**

The Court, as a threshold matter, will determine whether the action could have been brought originally in the Southern District of New York.[2]

The defendants contend that the Southern District of New York (and the Bankruptcy Court) have subject matter jurisdiction over the action pursuant to the Confirmation Order and 28 U.S.C. § 1334(b). In the Confirmation Order, the Bankruptcy Court retained jurisdiction for all matters pertaining to the Texaco bankruptcy

---

[2] Neither party asserts that the Southern District of New York would not have personal jurisdiction over the parties. Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7004(d) provides for nationwide service of process for an ancillary proceeding to a federal bankruptcy case. Id.; Baker's Equip./Winkler v. Galasso, 33 B.R. 307, 309 (Bankr. D.N.J. 1983).

and reorganized estate.  Specifically, the Bankruptcy Court retained jurisdiction to (1) "take any action to resolve any disputes arising out of or relating to any Claim[;] . . .and to take any action to resolve any disputes of creditors with respect to their claims . . . without any other limitation"; and (2) "construe and to take any actions to enforce the Plan, issue such orders as may be necessary for the implementation, execution and consummation of the Plan."  (See Defs. Br., at 8 (citing In re Texaco v. Sanders, 182 B.R. 937, 944 (Bankr. S.D.N.Y. 1995)).)  As such, "[t]he express provisions of the Texaco Plan and sound considerations of public policy compel the conclusion that [the Bankruptcy Court] has subject matter jurisdiction to enforce and interpret its own order."  Sanders, 182 B.R. at 944; see In re Emerson Radio Corp., 173 B.R. 490, 495 (D.N.J. 1994) (concluding, in post-confirmation-order proceeding, transfer of venue was appropriate because United States Bankruptcy Court for the District of New Jersey reserved exclusive jurisdiction, inter alia, "to hear and determine disputes arising in connection with the interpretation, implementation or enforcement" of the Plan), aff'd, 52 F.3d 50 (3d Cir. 1995).[3]

---

[3] The Advisory Committee Note to the 1991 amendments to Bankruptcy Rule 3022 provides:  "A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to [section] 350(b) of the [Bankruptcy] Code."  Id.

8

"Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction.  But neither the bankruptcy court nor the parties can write their own jurisdictional ticket.  Subject matter jurisdiction cannot be conferred by consent of the parties."  In re Resorts Int'l, 372 F.3d 154, 161 (3d Cir. 2004).  Also,

> [w]here a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization.  Similarly, if a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order.  Bankruptcy courts can only act in proceedings within their jurisdiction.  If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization . . . are fundamentally irrelevant.  But if there is jurisdiction, we will give effect to retention of jurisdiction provisions.

Id. (internal citations omitted).  As such, the Court will examine whether this dispute falls within the Bankruptcy Court's subject matter jurisdiction.

Section 1334(b) provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11, [and] original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Id.  Section 157(a) of the Bankruptcy Code permits district courts to refer most matters to a bankruptcy court.  In re Combustion Eng'g, 395 F.3d 190, 225 (3d Cir. 2004).  Therefore, "[b]ankruptcy court jurisdiction potentially extends to four types of title 11 matters:  (1) cases under title 11, (2)

proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." Id.  Here, the Court's inquiry focuses on the fourth type of proceeding.

A bankruptcy court has "related to" jurisdiction over a matter when "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re Resorts Int'l, 372 F.3d at 164.  The "key word in this test is conceivable and that certainty, or even likelihood, is not a requirement." Id. (citations and quotations omitted).  Thus, "[b]ankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankruptcy estate." In re Marcus Hook Dev. Park, 943 F.2d 261, 264 (3d Cir. 1991) (citations and quotations omitted).  The Court finds that this action will have an impact on the defendants' rights and liabilities as successors-in-interest to the debtor, Texaco.  As such, the Southern District of New York (and the Bankruptcy Court) have subject matter jurisdiction over this action.

The plaintiff relies on Walnut Associates v. Saidel, 164 B.R. 487, 490, 491 (E.D. Pa. 1994), for the proposition that "[w]hen a bankruptcy case is 'closed' that court lacks jurisdiction to do anything since the 'estate' no longer exists." (Pl. Br., at 4.) The Saidel court did "find that where a bankruptcy case is closed

10

and the estate no longer exists, and where [a party] does not seek to have the bankruptcy case opened for cause . . . the court is without jurisdiction to entertain any proceedings." Id. at 491. However, the plaintiff in that case also was "not attempting to re-open the bankruptcy case for cause pursuant to 11 U.S.C. § 350(b), nor . . . ask[ing] the court to enforce or interpret its own orders." Id. at 493-94 (citations and internal quotations omitted). Here, the defendants seek to (1) re-open the bankruptcy case for cause pursuant to 11 U.S.C. § 350(b), and (2) ask the Bankruptcy Court to enforce or interpret the Confirmation Order. Accordingly, Saidel is inapplicable here.

## II. Private Interest Factors

Only two of the six aforementioned "private interest" factors favors the plaintiff.[4] First, although the plaintiff did not initially file its action with this Court, it did bring the action in the New Jersey Superior Court, Ocean County. Also, the plaintiff did not oppose the defendants' notice of removal of the

---

[4] The Court need not analyze the second "private interest" factor — the defendants' preference — as this motion to transfer indicates that the defendants prefer venue in the Southern District of New York. The other three "private interest" factors do not favor either party. First, although ChevronTexaco is apparently a much larger entity than Norkus, Norkus has not demonstrated a significant impact — as opposed to the normal considerations inherent in litigation — from the possibility of litigating in the Southern District of New York. Second, no party has indicated that witnesses or documents could not be produced in both fora.

action to this Court.  Thus, the Court finds that the plaintiff intended to litigate this action in New Jersey.  A plaintiff's choice of forum is generally accorded great weight in the section 1404(a) analysis and should not be "lightly disturbed."  <u>Jumara</u>, 55 F.3d at 879.  As such, the Court finds that this factor weighs in favor of the plaintiff.  Second, the Court finds that the operative facts of the litigation occurred in New Jersey as:  (1) the Site is located in New Jersey, and (2) the alleged contamination occurred in New Jersey.  Accordingly, the "private interest" factors — to the extent they weigh in favor of either party — weigh in favor of maintaining the action in this Court.

### III. Public Interest Factors

The Court, concerning the "public interest" factors, finds that (1) New Jersey does have a local interest in deciding a controversy that originated in New Jersey and (2) if the parties get past the discharge issue, this Court is more familiar with the New Jersey environmental laws — including the Spill Act — that would govern this action.  <u>See</u> <u>Sandvik</u>, 724 F.Supp. at 310-11 (holding that venue was properly in New Jersey, the place where the contamination occurred and where most of the witnesses to the dispute resided).  Accordingly, the "public interest" factors — to the extent they weigh in favor of either party — weigh in favor of maintaining the action in this Court.

**IV.  The Interest of Justice**

The Court finds that the "private interest" and "public interest" factors, to the extent they favor either party, do favor the plaintiff.  However, the Court finds further that the comparative convenience of the transferee and transferor fora is not significant and, therefore, the interest of justice would be best served by transferring this action to the Southern District of New York.  As the court in May v. Texaco Inc. explained:

> It is well established that the interest of justice is a factor to be considered on its own and an important one, and that the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction.  Among the factors considered relevant to the interest of justice are trying related litigation together and the transferee judge's familiarity with the applicable law.
>
> The Texaco case was described . . . as the largest in history.  Today, more than ten years after the signing of the Confirmation Order, the bankruptcy continues to affect litigation, like this case, across the nation.  There are compelling reasons for this court to exercise its discretion and transfer resolution of this case to the court that issued the Confirmation Order.
>
> This case presents a streamlined vehicle for resolution of the bankruptcy discharge issue. . . .  The New York court has developed and demonstrated familiarity with the many issues related to the defense in general and to the unique Texaco bankruptcy, specifically.  The court that issued a confirmation order is generally best suited to interpret its own order.

1998 WL 34350028, at *4 (citations and quotations omitted).

The plaintiff relies on the Sanders court's acknowledgment that other courts (including the district court) had concurrent jurisdiction to decide the issue of dischargeability.  (Pl. Br.,

13

at 13-14 (citing Sanders, 182 B.R. at 946).)  Therefore, the plaintiff contends that this Court may not transfer the action to the Southern District of New York because this Court also has jurisdiction to decide the dischargeability issue.  (Id. at 14.)  However, the Sanders court did not discuss whether a case commenced in another district in which a party raises a discharge defense should be transferred to the New York Court.  May, 1998 WL 34350028, at *2.  Instead, in an action alleging that Texaco was liable for environmental contamination — similar to this case — the Sanders court determined that it had jurisdiction over the motion to reopen the Texaco bankruptcy and enjoin state court litigation proceeding in Louisiana.  Sanders, 182 B.R. at 944.

    The issue here is not, as the plaintiff asserts, whether the "issue of dischargeability must be decided in the Southern District of New York."  (Pl. Br., at 14.)  Rather, the issue is whether transferring this action to the Southern District of New York is in the "interest of justice."  In this case, where the potential discharge would have a significant impact on the plaintiff's claims — possibly eliminating them entirely — the interest of justice favors transferring the action to the court most familiar with the bankruptcy case.

14

**CONCLUSION**

The defendants have demonstrated that transfer is appropriate to the United States District Court for the Southern District of New York under section 1404(a). Accordingly, the Court will (1) grant the part of the motion seeking to transfer the action to the United States District Court for the Southern District of New York pursuant to section 1404(a), and (2) deny as moot the part of the motion seeking to transfer the action pursuant to section 1412.[5] The Court will issue an appropriate order.

      s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

---

[5] The factors used to determine whether transfer is appropriate are the same under either section 1404(a) or 1412. Larami Ltd. v. Yes! Entm't Corp., 244 B.R. 56, 61 (D.N.J. 2000).